(R.D. 11735)

C. S. EMERY & COMPANY, INC. *v.* UNITED STATES

---

[4] *Cf.*, e.g., *Mannesmann-Meer, Inc.* v. *United States,* 62 Cust. Ct. 1023. 1027–28, A.R.D. 253 (1969), *aff'd* 58 CCPA 6, C.A.D. 995 (1970).

[5] *Greb Industries, Ltd.* v. *United States,* 64 Cust. Ct. 608, R.D. 11691, 308 F. Supp. 88 (1970)—on which plaintiffs place major emphasis—is simply not in point. For in contrast to the situation in the present case, in *Greb* the evidence showed (1) the price at which merchandise such as the imported merchandise was sold in the home market, Canada; and (2) that the home market price was the same as or lower than the export price to the United States.

(Decided February 16, 1971)

*Gaston, Snow, Motley & Holt* (*Richard M. Reilly* and *Paul V. Power* of counsel) for the plaintiff.

*L. Patrick Gray, III, Assistant Attorney General* (*Owen J. Rader* and *Frederick L. Ikenson*, trial attorneys), for the defendant.

RICHARDSON, Judge: The merchandise of these reappraisement appeals that were consolidated for trial consists of pins, buttons, and badges which were exported from Canada at various times between 1961 and 1964, and advanced in value upon appraisement following entry at the port of Newport, Vermont. It is claimed by the plaintiff-broker that the merchandise should have been appraised at the entered values.

At the trial defendant's counsel represented to the court that the involved merchandise was appraised on the basis of constructed value. And it was conceded by counsel for the plaintiff that constructed value is the proper basis for determining the value of said merchandise. Consequently, the question before the court is whether the record supports a constructed value for the instant merchandise as contended

for by plaintiff different from that returned in the appraisement. In this connection the court deems it appropriate to set forth the competing values for the various articles here involved as follows:

| Imported Article | Appraised Value (Canadian Funds) | Claimed Value (Canadian Funds) |
|---|---|---|
| Optimist International Button_____ | $. 60 | $. 30 |
| Future Teachers of America Pin_____ | . 56 | . 26 |
| Toastmaster International (Small) Member Button_____ | . 53 | . 25 |
| Toastmaster International (Large) Member Button_____ | . 67 | . 36 |
| Beta Sigma Phi Pledge Pin and Guard___ | . 56 | . 26 |
| Nu Phi Mu Pledge Pin_____ | . 51 | . 20 |
| Nu Phi Mu Ritual Badge and Guard____ | 1. 15 | . 53 |

It is presumed that the values returned in the appraisements herein are correct; and the burden of proof is upon the plaintiff to prove otherwise. 28 U.S.C.A., section 2633.

The record before the court consists of the testimony of two witnesses called on plaintiff's behalf, certain cost records compiled by one of said witnesses (collective exhibit 1), and an alleged customs agent's report, dated February 5, 1965, received in evidence as exhibit A. Decision was reserved by the court at the trial as to the admissibility of a second customs agent's report, dated March 9, 1966, and identified as exhibit B for identification.

The court turns first to the evidentiary questions posed by the instant record. With respect to exhibit B for identification the court is of the opinion that said exhibit is inadmissible in evidence. This exhibit appears to relate to an investigation pertaining to entries made at a port of entry other than the port of entry here involved. But it is noted that there is nothing in exhibit B for identification which indicates what particular period of time is under investigation in the report. Consequently, it cannot be affirmatively said of exhibit B for identification that it speaks as of a time pertinent to the involved exportations. And since the relevancy of exhibit B for identification in point of time has not been established in the document itself, it is inadmissible on the general ground of relevancy. *Cf. V. G. Nahrgang v. United States,* 18 Cust. Ct. 573, 577, R.D. 7214 (1947), affirmed in 19 Cust. Ct. 333, R.D. 7460 (1947). And on such ground plaintiff's objection to the admission into evidence of exhibit B for identification is sustained.

When exhibit A was admitted into evidence at the trial representation was made by counsel to the court that exhibit A itself was a customs agent's report, one of the reports expressly authorized by

statute (28 U.S.C.A., section 2633) to be received in evidence. It now develops upon further inspection of exhibit A that the exhibit is not a customs agent's report, but is at best only a letter purporting to transmit a copy of a customs agent's report "addressed to the Office of Investigations, Division of Enforcement, Washington, D.C.," from Boston, Mass. to St. Albans, Vermont. At the trial in Plattsburg, New York, July 15, 1969, counsel for the government called the court's attention to pages 70–71 of the record made before another judge in Boston, November 15, 1968 (R. 78) ; where government counsel withdrew the tender of an exhibit as he was continuing the case to see if he could develop the information (purported to be in the exhibit) through other testimony, and stated a copy would be given to plaintiff's counsel; and represented to the court at Plattsburg that exhibit A was the same document tendered in Boston. It is noted that exhibit A is dated February 5, 1965, and on page 69 of the record made in Boston (which was not called to the court's attention in Plattsburg), the exhibit identified as the exhibit tendered in Boston is dated October 7, 1965. How can a customs agent's report dated October 7, 1965 be transmitted in exhibit A dated February 5, 1965? The alleged report of October 7, 1965 referred to in the letter dated February 5, 1965 has not been offered or received in evidence; and the court is, therefore, unable to determine whether the author of the letter is the same person who authored the report to which the letter refers. The letter contained in exhibit A, standing alone, is not expressly admissible by statute as an exception to the hearsay rule, and, under general rules of evidence, would be inadmissible as hearsay. The court is now obliged to and does reverse its trial ruling as to exhibit A in the light of these facts. Also, counsel for plaintiff states in his brief that he did not receive a copy of the exhibit which government counsel said it would supply. The court now sustains an objection to the admission into evidence of exhibit A on the ground that it is not a customs agent's report as the court had been previously led to believe it was. And the document depicted in exhibit A formerly in evidence is deemed marked exhibit A for identification.

This brings the court to the merits of plaintiff's case. The provisions of 19 U.S.C.A., section 1401a(d) (section 402(d), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956) read as follows:

### Constructed value

(d) For the purposes of this section, the constructed value of imported merchandise shall be the sum of—

(1) the cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of

the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceding the date of exportation of the merchandise undergoing appraisement which would ordinarily permit the production of that particular merchandise in the ordinary course of business;

(2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States; and

(3) the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise undergoing appraisement in condition, packed ready for shipment to the United States.

Ben S. Fuller, vice president of L. G. Balfour Company of Attleboro, Mass., the ultimate consignee of the imported merchandise here involved, hereinafter referred to as Balfour-Mass., testified that L. G. Balfour Company of Canada, Ltd., the exporter of the involved merchandise, hereinafter referred to as Balfour-Canada, is the wholly owned subsidiary of Balfour-Mass. and that he is president of the subsidiary company. Mr. Fuller stated that Balfour-Mass. makes commercial jewelry, fraternity jewelry, high school and college jewelry, and paper products and various other items, and that Balfour-Canada has been in business since around 1958 and manufactures jewelry only which it sells to high schools and some commercial concerns, but not in quantity as a national contract as does Balfour-Mass. The witness also testified, among other things, that Balfour-Canada never sold its goods in the wholesale market in the United States and that the subsidiary's sales in the States have been only to the parent company—with the instant merchandise representing the only series of sales consummated between the two companies during the period of time in question, that he did not think that Balfour-Canada's Canadian competitors sold their goods in the United States because he would not think that they would have a market in the States, that Balfour-Canada's competitors sold in Canada through salesmen who called on individuals and organizations the same as did Balfour-Canada, and that the dies which where used to produce the merchandise in controversy herein by Balfour-Canada were American made dies.

Wyatt Johnson, vice president and general manager of Balfour-Canada testified that he prepared the cost cards received in evidence as plaintiff's collective exhibit 1 which relate to the imported merchandise at bar, that the costing set forth in collective exhibit 1, which, parenthetically, equals the claimed values, was derived from certified

invoices of suppliers of materials used in the manufacture of the imported articles, reflects actual labor charges incurred in the production of said articles and of "similar" articles produced with Canadian dies, and contains an overhead and profit factor equal to 100 percent of the material and labor costs—allocated in the ratio of 70 percent to overhead and 30 percent to profit. Mr. Johnson testified that the disputed articles were packaged in bulk after having been simply wrapped in tissue paper. And no costs are recorded on collective exhibit 1 for the expense of containers, coverings or packaging in bulk.

Mr. Johnson also testified with respect to costing of an item produced by Balfour-Canada which he considered to be "similar" to the imported articles. He stated that in 1961 Balfour-Canada sold 20,000 pins to the Canadian Red Cross which were priced according to the same costing formula that was utilized in pricing the merchandise at bar. The Canadian Red Cross pins were 3 color enamel pins, with a joint and catch on the back made out of gilting metal, some silverplated and some gold electro-plated. Some of these pins were used for water safety instructors' badges. According to Mr. Johnson, the factory cost of this pin was 20 cents, to which was added a packaging (box) cost of 3½ cents, a sales and administration cost of 1½ cents, a salesman commission of 2 cents per pin, and a Canadian Federal sales tax of 3 cents (10.41%).

It was brought out during cross-examination of the witness Johnson that he had made no attempt to inquire of Balfour-Canada's Canadian competitors making "similar" merchandise to that at bar as to their general overhead expense or to ascertain what their profits were. He had testified on direct examination that he was familiar with the business of Balfour-Canada's Canadian competitors, but that he possessed no knowledge as to whether any of said competitors had sold in wholesale quantities to the United States. And it was also brought out upon cross-examination of Mr. Johnson as well as upon redirect examination of the witness Fuller that the sum of $93,168.50 was paid by Balfour-Mass. to Balfour-Canada against the invoices at bar which totaled $57,171.50. Neither Johnson nor Fuller were able to account to the court for the overpayment herein to the extent of $35,997, apparently due to lack of personal knowledge of the details of the financial transaction.

The foregoing constitutes the salient evidence underlying plaintiff's case. The court is not persuaded by the testimony given by the witnesses Fuller and Johnson that the sum of $93,168.50 which was paid for the instant merchandise has no bearing on its constructed value. The plaintiff, faced with the inevitability of a constructed value determination in this case, whether in terms of the evidence of record or in terms of the presumption of correctness attaching to the

appraisements herein, should have been better prepared to negate the natural inference that such overpayment is somehow related to the value of the merchandise, if, in fact, this is not the case. If such high level officers as Fuller and Johnson are not conversant with the facts relating to this overpayment, then certainly someone else in the employ of the subsidiary company must be.

It is also disquieting to the court to note that die costs have not been included in the cost of materials which went into the manufacture of the instant merchandise notwithstanding the fact that the costing cards received in evidence as collective exhibit 1 make provision for the entry of die costs. Die costs are tooling costs which must be included in any constructed value determination even if the dies are not owned by the foreign manufacturer. *Cf. F. X. Coughlin Co.* v. *United States*, 58 Cust. Ct. 615, R.D. 11271 (1967), involving dies owned by the parent importer corporation and loaned to its foreign manufacturing subsidiary corporation.

The court is induced by the foregoing circumstances to believe that the manufacturing costs revealed in the transactions subsisting between the parent corporation and its subsidiary corporation herein, Balfour-Mass. and Balfour-Canada, respectively, do not fairly reflect the amount of such costs usually reflected in sales in the market in question of merchandise of the same general class or kind as that at bar. The court, therefore, disregards such transactions pursuant to 19 U.S.C.A., section 1401a(g)(1)(2)(E) in the ascertainment of statutory constructed value as provided for in section 1401a(d).

This leaves for consideration the evidence adduced by plaintiff of transactions between Balfour-Canada and the Canadian Red Cross involving merchandise said to be "similar" to that at bar, insofar as concerns the elements of value described in paragraph (1) of section 1401a(d). Owing to divergence in the types of articles here involved (underscored by variation in price markups), it is clear that at best the Canadian Red Cross pin could only be "similar" to some of the involved items. Hence, the question is which of the imported articles are similar to the Canadian pin? No evidence of a comparative nature has been introduced into the record to enable the court to resolve this question factually. Consequently, the cost of materials and of fabrication of the involved items of merchandise cannot properly be determined on the basis of the Canadian Red Cross pin.

With respect to the elements of value described in paragraph (2) of section 1401a(d), it is clear that neither the lack of knowledge of the witness Johnson nor the speculations of the witness Fuller concerning the activities of Balfour-Canada's Canadian competitors as regard United States markets can have the effect of rebutting the *presumed* existence of a collateral basis for ascertaining general ex-

penses and profit for purposes of valuation of the instant merchandise complying in all respects with statutory requirements. And since plaintiff offered no other evidence to negative a collateral basis for ascertaining statutory general expenses and profit, further inquiry by the court into the evidence with a view toward pursuing an alternative basis for developing this element of value would be premature, and, therefore, improper. *Cf. N. M. Albert Co., Inc., et al.* v. *United States*, 62 Cust. Ct. 1029, A.R.D. 254 (1969).

With respect to the elements of value described in paragraph (3) of section 1401a (d), there is no evidence of record that expenses were in fact incurred in placing the involved merchandise in condition ready for shipment to the United States. The evidence does indicate, however, the incurring of some expense by the exporter in connection with wrapping merchandise in tissue paper and packaging it in bulk. For valuation purposes such expense must be included in a constructed value appraisement. The statute mandates inclusion of the costs of *"all* containers and coverings *of whatever nature"*. Plaintiff failed to include the cost of "packaging in bulk" in its proofs respecting the instant merchandise, and as such, did not comply with the clear directive of the statute.

Such deficiencies in the proofs offered by plaintiff herein preclude the existence of a *prima facie* case supporting the claimed values. And it follows therefrom that the burden of proof never shifted to defendant to present any evidence to support the appraised values.

On this instant record the court finds as facts:

1. That the merchandise herein consists of various items of jewelry which were exported from Canada between the years 1961 and 1964.

2. That said merchandise was appraised upon entry at the port of Newport, Vermont, at prices ranging from $0.51 (Canadian funds) per unit to $1.15 (Canadian funds) per unit, on the basis of constructed value as defined in 19 U.S.C.A., section 1401a (d) (section 402 (d), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956).

3. That there is no evidence in the record supporting unit values different from or other than those returned in the appraisements herein.

And upon the foregoing findings of fact the court concludes as matters of law:

1. That plaintiff has failed to rebut the presumption of correctness attaching to the appraisements herein.

2. That constructed value as defined in 19 U.S.C.A., section 1401a (d) (section 402 (d), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956) is the proper basis for determination of the value of the merchandise the subject of the reappraisement ap-

peals enumerated in the Schedule of Reappraisement Appeals annexed to and made a part hereof.

That such value is represented herein by the appraised values. Judgment will be entered herein accordingly.